FILED

MAY 30 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

ORDERED PUBLISHED

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | | |
|---|---|---|---|
| In re: | ) | BAP No. | CC-16-1318-KuFL |
| AHMAD J. TUKHI, | ) | Bk. No. | 8:15-bk-14015-MW |
|        Debtor. | ) | Adv. No. | 8:15-ap-01449-MW |
| ABDUL HABIB OLOMI, | ) | | |
|        Appellant, | ) | | |
| v. | ) | **OPINION** | |
| AHMAD J. TUKHI, | ) | | |
|        Appellee. | ) | | |

Argued and Submitted on March 23, 2017
at Pasadena, California

Filed – May 30, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Mark S. Wallace, Bankruptcy Judge, Presiding

Appearances: Nikolaus W. Reed argued for appellant; Randal Paul Mroczynski of Cooksey, Toolen, Gage, Duffy & Woog argued for appellee.

Before: KURTZ, FARIS and LAFFERTY, Bankruptcy Judges.

KURTZ, Bankruptcy Judge:

## INTRODUCTION

Abdul Habib Olomi appeals from a judgment dismissing his nondischargeability action against chapter 7[1] debtor Ahmad J. Tukhi. The bankruptcy court dismissed the action because Olomi appeared for a pretrial conference without having filed or served a pretrial stipulation as required by the bankruptcy court's Local Rule 7016-1(b) and (c). According to the bankruptcy court, Olomi's noncompliance was the result of the "fault" of his counsel but was neither willful nor done in bad faith.

Even though this one-time act of noncompliance would have resulted merely in several weeks of delay in the pretrial proceedings, the bankruptcy court held that dismissal was appropriate either under its Local Rule 7016-1(f) sanctioning authority or as a failure to prosecute under Civil Rule 41(b) (made applicable in adversary proceedings by Rule 7041). The bankruptcy court's dismissal order was an abuse of discretion. The bankruptcy court did not apply the correct legal standard before imposing the sanction of dismissal based on a Local Rule violation. Furthermore, the facts in the record do not support dismissal either based on the Local Rule violation or based on a failure to prosecute.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure, and all "Local Rule" references are to the Local Rules of the United States Bankruptcy Court for the Central District of California.

2

Accordingly, the bankruptcy court's judgment of dismissal is VACATED, and this matter is REMANDED for completion of pretrial proceedings and the setting of a trial date.

**FACTS**

Tukhi commenced his bankruptcy case in August 2015, and Olomi timely filed a nondischargeability complaint against Tukhi in November 2015. Olomi stated a single claim for relief under § 523(a)(6) for a debt allegedly arising from a willful and malicious injury. According to Olomi, Tukhi intentionally struck him with an automobile.

The nondischargeability action proceeded without incident – even smoothly – up until the time the parties' joint pretrial stipulation was due. In the bankruptcy court's scheduling order entered March 7, 2016, the bankruptcy court set a pretrial conference date of September 28, 2016. The scheduling order contained the following warning:

> **The parties are placed on notice that it is the Court's policy to strictly enforce the Local Bankruptcy Rules relating to pre-trial conferences and this Court's procedures supplement to those rules, which are published on the court's website. Failure to comply with the provisions of this order may subject the responsible party to sanctions, including judgment of dismissal or the entry of a default and a striking of the answer.**

Scheduling Order (Mar. 7, 2016) at pp. 2-3 (emphasis in original).

The bankruptcy court obviously considered it extremely important to obtain the litigants' compliance with its pretrial procedures. The scheduling order admonition was the fourth of four advance warnings regarding the importance of adhering to required pretrial procedures. At the initial status conference

3

held immediately before the scheduling order was issued, the bankruptcy court stated as follows:

> THE COURT: And the Court wishes to advise the parties that the Court applies the Local Bankruptcy Rules relating to pretrial conferences very strictly. The Court views the pretrial conference as an indispensable part of the resolution of this matter and probably the second most important proceeding after the trial itself.
>
> And for that reason, it's the Court's practice that if there is a material default by the plaintiff in compliance with the Local Bankruptcy Rules relating to pretrial conferences, the most likely outcome is that the Court will grant judgment of dismissal in favor of the defendant and, on the other hand, if there's a material default by the defendant, the Court's most likely outcome is that the Court would strike the answer and enter a default.
>
> These consequences are in the nature of terminating sanctions. The Court believes that those types of -- that that type of sanction is appropriate in connection with pretrial conferences because to allow a material breach of those rules and to simply impose a monetary sanctions it could be viewed as setting up a situation where there's simply a toll charge for violating the Local Bankruptcy Rules and I don't think that's appropriate. So the parties are on notice of the Court's intentions in this regard and the Court will certainly be looking to the parties to fully comply with those Local Bankruptcy Rules.

Hr'g Tr. (Mar. 2, 2016) at 4:14-5:15.[2]

There were similar warnings about the importance of the pretrial procedures in form instructions accompanying the summons and in the presiding judge's supplemental procedures set forth on the court's website. Indeed, the form instructions accompanying

---

[2] Neither party included in their excerpts of record a copy of the transcript from the March 2, 2016 status conference. Nonetheless, we can consider the contents of this transcript, which we obtained by accessing the bankruptcy court's electronic docket. See Franklin High Yield Tax-Free Income Fund v. City of Stockton, Cal. (In re City of Stockton, Cal.), 542 B.R. 261, 265 n.2 (9th Cir. BAP 2015).

4

the summons stated:

> **11. Joint Pre-Trial Order. Failure to timely file a Joint Pre-Trial order may subject the responsible party and/or counsel to sanctions, which may include dismissal of the adversary proceeding. The failure of either party to cooperate in the preparation of timely filing of a Joint Pre-Trial Conference [sic] or appear at the Joint Pre-Trial Conference may result in the imposition of sanctions under LBR 7016-1(f) or (g).**

Early meeting of Counsel and Status Conference Instructions (Nov. 19, 2015) at ¶ 11 (emphasis in original).

    Notwithstanding all of these warnings, and the unequivocal requirement set forth in Local Rule 7016-1(b) and (c) for the preparation, service and filing of a joint pretrial stipulation in advance of the pretrial conference, Olomi attended the pretrial conference without having first served or filed the requisite pretrial stipulation. When the court asked Olomi's counsel where his pretrial stipulation was, counsel explained that he had mistakenly prepared and filed instead a joint status report because he was inexperienced in practicing before the bankruptcy court and had misread what the "statute" required. The bankruptcy court seemed to credit counsel's explanation for his noncompliance but nonetheless concluded that dismissal was appropriate under Local Rule 7016-1(f)(4). The court reasoned that dismissal was justified because: (1) the pretrial conference and the pretrial procedures were very important; (2) Olomi had been warned of that importance and of the consequences for failure to comply; and (3) lesser sanctions in the form of monetary sanctions would amount to nothing more than a "toll charge" for violating the very important pretrial procedures. The bankruptcy court reiterated the same reasoning

5

1  in its written order of dismissal.
2      Within a few days of the bankruptcy court's dismissal
3  ruling, Olomi simultaneously filed both a notice of appeal and a
4  motion for reconsideration.  Olomi explicitly based his
5  reconsideration motion on Civil Rule 60(b)(1), as made applicable
6  in bankruptcy cases pursuant to Rule 9024.  Olomi maintained that
7  the court should grant him relief from his excusable neglect
8  under the factors set forth in Pioneer Investment Services v.
9  Brunswick Assocs., 507 U.S. 380, 395 (1993).
10     Olomi's counsel filed a declaration in support of the
11 reconsideration motion in which he elaborated on his efforts to
12 comply with the court's pretrial procedures.  As Olomi's counsel
13 put it, he and his paralegal "discussed and reviewed" the Local
14 Rules in July 2016 and prepared a draft joint pretrial
15 stipulation as well as a draft joint status report at the time.
16 However, in September 2016, when it came time to submit these
17 documents, he asserts that he only found the draft joint status
18 report on his computer, and he did not recall the Local Rule
19 requirement to file and serve the draft joint pretrial
20 stipulation.  According to Olomi's counsel, he carefully reviewed
21 the March 2016 scheduling order and also reviewed the docket, and
22 neither mentioned any deadline for filing or serving a joint
23 pretrial stipulation, so he (erroneously) thought that filing and
24 serving the joint status report would comply with the relevant
25 pretrial procedures.
26     After full briefing and a hearing, the bankruptcy court took
27 the matter under submission and ultimately issued a nine-page
28 memorandum decision and order denying the reconsideration motion.

Even though Olomi specifically asked for relief under Rule 9024 and Civil Rule 60(b), the bankruptcy court treated Olomi's motion as a motion to alter or amend the judgment under Rule 9023 and Civil Rule 59(e). In relevant part, the bankruptcy court ruled that it did not commit any manifest error of law when it dismissed Olomi's adversary proceeding. Interestingly, in making this ruling, the court analyzed the dismissal as if it were based on a failure to prosecute under Rule 7041 and Civil Rule 41(b); in contrast, at the time of the pretrial conference, the court had based the dismissal on violation of Local Rule 7016-1(c) and (e) – sanctionable pursuant to Local Rule 7016-1(f).

In any event, after considering the additional evidence submitted in support of the postjudgment motion, identifying the five-part test for dismissals for failure to prosecute and enhancing its findings in support of its dismissal ruling, the bankruptcy court concluded that the dismissal did not constitute a manifest injustice and that the postjudgment motion should be denied.

Olomi timely appealed the judgment of dismissal, but he did not file a new or amended notice of appeal from the order denying his postjudgment motion.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I), and we have jurisdiction under 28 U.S.C. § 158 to review the bankruptcy court's judgment of dismissal.

We do not have jurisdiction to review the bankruptcy court's order denying Olomi's postjudgment motion. As the governing Rule

specifies:

> If a party intends to challenge an order disposing of any motion listed in subdivision (b)(1) . . . the party must file a notice of appeal or an amended notice of appeal. The notice or amended notice must . . . be filed within the time prescribed by this rule, measured from the entry of the order disposing of the last such remaining motion.

Rule 8002(b)(3). An appellant's failure to comply with the appeal filing deadlines set forth in Rule 8002 typically deprives us of jurisdiction. See Slimick v. Silva (In re Slimick), 928 F.2d 304, 306 (9th Cir. 1990).

That being said, in reviewing the bankruptcy court's judgment of dismissal, we have jurisdiction (and a duty) to review any enhanced findings or "new factual determinations" the bankruptcy court made in support of its original ruling – even if those enhanced findings were part of the court's ruling on a postjudgment motion that never was appealed and even if the court considered and relied upon evidence that was not presented until after the bankruptcy court made its original ruling. Moldo v. Ash (In re Thomas), 428 F.3d 1266, 1268-69 (9th Cir. 2005) ("The BAP erred in concluding that it lacked jurisdiction to review the bankruptcy court's amended findings"); see also Ash v. Moldo (In re Thomas), 2006 WL 6811032 at *4-7 (9th Cir. BAP 2006) (on remand from Circuit, holding that bankruptcy court's amended findings were clearly erroneous based on evidence submitted to the court as part of postjudgment proceedings).

**ISSUE**

Did the bankruptcy court abuse its discretion when it dismissed Olomi's nondischargeability action?

8

**STANDARDS OF REVIEW**

We review a bankruptcy court's local-rules based dismissal for an abuse of discretion. Lee v. Roessler-Lobert (In re Roessler-Lobert), ___ B.R. ___, 2017 WL 2189520, *4 (9th Cir. BAP May 15, 2017). We similarly review a bankruptcy court's dismissal for lack of prosecution. Omstead v. Dell, Inc., 594 F.3d 1081, 1084 (9th Cir. 2010); Moneymaker v. CoBEN (In re Eisen), 31 F.3d 1447, 1451 (9th Cir. 1994).

We employ a two-part test to determine whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc). First, we review de novo whether the bankruptcy court identified and applied the correct legal rule. Id. Second, we examine the bankruptcy court's factual findings under the clearly erroneous standard. Id. at 1262 & n.20. We must affirm the bankruptcy court's factual findings unless they were "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. (internal citations omitted).

**DISCUSSION**

**A. Dismissal Based On Local Rule Violation**

In its original dismissal ruling, the bankruptcy court relied on one of the sanctions provisions in its Local Rules - Local Rule 7016-1(f)(4). On its face, that Local Rule authorized the bankruptcy court to dismiss Olomi's action based on his violation of Local Rule 7016-1(b) and (c), which imposed a duty on Olomi as the plaintiff to prepare, sign and serve a draft pretrial stipulation.

1    This Panel has held that dismissal sanctions based on local
2 rule violations must be supported by a finding of a degree of
3 culpability higher than mere negligence or fault, such as
4 "willfulness, bad faith, recklessness, or gross negligence" or a
5 "repeated disregard of court rules."  In re Roessler-Lobert, ___
6 B.R. ___, 2017 WL 2189520, *10; see also Kostecki v. Sutton (In
7 re Sutton), 2015 WL 7776658, at *8 (Mem. Dec.) (9th Cir. BAP Dec.
8 3, 2015); Taylor v. Singh (In re Singh), 2016 WL 770195, at *4-5
9 (Mem. Dec.) (9th Cir. BAP Feb. 26, 2016).

10   In so holding, In re Roessler-Lobert relied on Zambrano v.
11 City of Tustin, 885 F.2d 1473, 1480 (9th Cir. 1989).  In addition
12 to requiring the above-referenced finding assessing the
13 culpability and/or state of mind of the rule violator, Zambrano
14 indicated that any sanctions order based on a local rule
15 violation needed to be "proportionate to the offense and
16 commensurate with principles of restraint and dignity inherent in
17 judicial power."  Zambrano, 885 F.2d at 1480.  The bankruptcy
18 court also needed to consider:  "(1) the public's interest in
19 expeditious resolution of litigation; (2) the court's need to
20 manage its docket; (3) the risk of prejudice to the defendants;
21 (4) the public policy favoring disposition of cases on their
22 merits[;] and (5) the availability of less drastic sanctions."
23 In re Roessler-Lobert, ___ B.R. ___, 2017 WL 2189520, *5, 10
24 (citing Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir.
25 1986)).

26   The bankruptcy court, here, did not consider the three-part
27 Zambrano test.  Prejudgment, the court did not consider the
28 culpability or state of mind of Olomi or his counsel, nor did the

10

1  court apply the traditional five-factor dismissal sanctions
2  standard originating from <u>Henderson</u>.  In addition, nothing in the
3  court's comments indicated that it ever considered, pre- or
4  postjudgment, whether the dismissal sanction was proportionate to
5  the offense.

6      <u>Zambrano</u> and <u>In re Roessler-Lobert</u> indicate that we may
7  review the record ourselves and independently determine whether
8  the record supported the bankruptcy court's sanctions ruling.
9  <u>Zambrano</u>, 885 F.2d at 1484 & n.32; <u>In re Roessler-Lobert</u>, ___
10 B.R. ___, 2017 WL 2189520, *5.  But the prejudgment record is
11 inadequate to support dismissal under <u>Zambrano</u> and <u>In re
12 Roessler-Lobert</u>.  At the time of the pretrial conference, there
13 was no prior history in the adversary proceeding of any delay or
14 noncompliance, and Olomi's counsel only stated that he had not
15 filed the required pretrial stipulation because he had misread
16 the rules and had thought a joint status report would be
17 sufficient.  Thus, absent a finding that Olomi's counsel's
18 explanation was not credible, the record as it existed at that
19 time essentially precluded a finding of culpability sufficient to
20 support dismissal under <u>Zambrano</u> and <u>In re Roessler-Lobert</u>.  The
21 same record limitations effectively would have made it impossible
22 to find that dismissal was proportionate to the offense or
23 commensurate with judicial restraint.

24     Postjudgment, in the process of denying Olomi's
25 reconsideration motion, the bankruptcy court specifically
26 considered whether Olomi's noncompliance was the result of
27 willfulness, bad faith or fault, and the court explicitly
28 determined that "Plaintiff's failure [was] due to fault."  Mem.

11

Dec. (Nov. 10, 2106) at 6:25.  As stated above, mere "fault" is insufficient under <u>Zambrano</u> and <u>In re Roessler-Lobert</u> to justify sanctions for violation of a Local Rule.  Nor does the additional evidence in the record regarding Olomi's attempts to comply with pretrial procedures persuade us that the record could have supported a gross negligence, recklessness or willfulness finding.

In short, the prejudgment record was insufficient under <u>Zambrano</u> and <u>In re Roessler-Lobert</u> to support the bankruptcy court's dismissal sanction based on a local rule violation, and none of the additional evidence presented or enhanced findings made postjudgment cured that insufficiency.

**B. Dismissal Based On A Delay In Prosecution**

As stated in the facts section, <u>supra</u>, the bankruptcy court offered a different legal basis for its dismissal sanction when it ruled on Olomi's reconsideration motion.  According to the court's ruling denying the reconsideration motion, dismissal was appropriate under Civil Rule 41(b) as made applicable in adversary proceedings by Rule 7041.  The elements for a Civil Rule 41(b) dismissal for failure to prosecute are different than those set forth above for a dismissal for violation of local court rules.  See <u>In re Roessler-Lobert</u>, ___ B.R. ___, 2017 WL 2189520, *5, 10.  Dismissal for failure to prosecute must be supported by a showing of unreasonable delay and by consideration of the five <u>Henderson</u> factors.  <u>Id.</u>  While no showing of heightened culpability is required, the delaying party's mental state typically is relevant, and the bankruptcy court should consider any excuse offered by the delaying party in the process

12

of determining whether the delay was unreasonable and whether there is a risk of prejudice to the adverse party. Id. at *5 & n.8.

Even though Olomi did not appeal the bankruptcy court's order denying his reconsideration motion, we will look at the bankruptcy court's postjudgment findings on each of the five Henderson factors, and we will consider all of the evidence before the court at the time those findings were made. See In re Thomas, 428 F.3d at 1268-69.

**1. The Public's Interest In Expeditious Resolution of Litigation**

The bankruptcy court found that the public's interest in the expeditious resolution of litigation lightly militated in favor of dismissal. The bankruptcy court acknowledged that the expeditious resolution of litigation was implicated by Olomi's noncompliance only to the extent that the noncompliance resulted in a delay in the resolution of the litigation. As the bankruptcy court explained, the pretrial conference would have been delayed by roughly four to six weeks, so the bankruptcy court determined that this amount of delay implicated the public's interest in expeditious litigation resolution only in a minor way.

While we admit to having some doubt that the noncompliant conduct at issue herein would have had any impact on the timing of the ultimate resolution of Olomi's action, the Ninth Circuit requires us to give significant deference to the bankruptcy court's assessment of whether the delay implicated the public interest because the bankruptcy court is in the best position to

13

determine what amount of delay reasonably can be endured.  <u>In re Eisen</u>, 31 F.3d at 1451; <u>Tenorio v. Osinga (In re Osinga)</u>, 91 B.R. 893, 895 (9th Cir. BAP 1988).

Based on this deference, and on the undisputed fact that Olomi's failure to file and serve the pretrial stipulation would have delayed the pretrial conference by several weeks, we hold that the bankruptcy court's finding on the first <u>Henderson</u> factor was not clearly erroneous.

### 2.  The Court's Need To Manage Its Docket

The bankruptcy court found that its need to manage its docket militated strongly in favor of dismissal.  The court noted that material noncompliance with Local Rule 7016-1 was fairly common notwithstanding the routine warnings the court gave at status conferences and in scheduling orders regarding the importance of the pretrial procedures.  In essence, the court reasoned that not issuing terminating sanctions when the litigant completely failed to file or serve a pretrial stipulation would encourage a relaxed and cavalier attitude towards the pretrial stipulation requirement, which in turn would materially contribute to additional congestion on the court's already busy docket.

Again, the Ninth Circuit has counseled that appellate courts generally should defer to the bankruptcy court's assessment of what action is needed to facilitate the court's management of its own docket.  <u>In re Eisen</u>, 31 F.3d at 1452; <u>see also</u> <u>Yourish v. Cal. Amplifier</u>, 191 F.3d 983, 991 (9th Cir. 1999) ("Because the district judge was in a superior position to evaluate the effects of delay on her docket, . . . we find that this factor strongly

14

favors dismissal."). Based on this deference and on the indisputable delay in the pretrial proceedings, we hold that the bankruptcy court's finding on the second Henderson factor was not clearly erroneous.

### 3. The Risk Of Prejudice To The Defendant

The bankruptcy court found that the four- to six-week delay in the pretrial proceedings constituted a risk of prejudice to Tukhi because the delay in pretrial proceedings might impede Tukhi's enjoyment of his fresh start. The court essentially determined that the unreasonable delay caused by Olomi's failure to file and serve the pretrial stipulation created a risk of interference with Tukhi's ability quickly to go to trial and thereafter enjoy the full benefit of his chapter 7 discharge. Because the length of the delay was relatively minor, the bankruptcy court concluded that this factor only lightly militated in favor of dismissal.

We agree with the bankruptcy court to a point. We agree that a significant delay in resolution of litigation caused by a litigant's unreasonable conduct can cause prejudice to the adverse party under certain circumstances. See Malone v. United States Postal Serv., 833 F.2d 128, 131 (9th Cir. 1987). This is particularly true in bankruptcy cases, when the litigation involves an exception to discharge claim, which clouds the debtor's fresh start by its mere existence. In re Osinga, 91 B.R. at 895; see also Tong v. Sandwell (In re Sandwell), 2005 WL 6960219, at *5 (Mem. Dec.) (9th Cir. BAP June 13, 2005).

However, the record here does not support the bankruptcy court's risk of prejudice finding. The contents of the joint

15

status report presented to the court at the time of the pretrial hearing – and resubmitted to the court as part of Olomi's papers in support of his reconsideration motion – reflect that Tukhi was advocating for a continuance of the pretrial conference until at least January 2017 and for trial not to be set before February 2017.  The status report further indicates that Tukhi's scheduling issues were being driven by the congestion of his counsel's trial calendar.  When, as here, the debtor Tukhi was advocating for even greater delay in the resolution of the nondischargeability action, it is illogical to conclude that Tukhi was at risk of being prejudiced by a brief delay resulting from the plaintiff Olomi's isolated incident of noncompliance with pretrial procedures.[3]

We therefore hold that the bankruptcy court's finding on the third <u>Henderson</u> factor was clearly erroneous.

**4.  The Public Policy Favoring Disposition Of Cases On Their Merits**

The bankruptcy court conceded that this factor militated against dismissal, but the court posited that the force of this factor was attenuated because Olomi's conduct was impeding the progress of the case towards a merits resolution.  The two

---

[3] For purposes of prejudice, it also is worth noting that Local Rule 7016-1(e)(2) prescribes procedures parties other than plaintiff must take when the plaintiff fails to comply with the pretrial stipulation requirement.  It is undisputed here that Tukhi did not follow these procedures.  If Tukhi had been concerned about potential prejudice arising from the delay caused by Olomi's failure to file and serve the pretrial stipulation, Tukhi could have helped to keep the matter on track by filing and serving the declaration prescribed in Local Rule 7016-1(e)(2).

16

decisions on which the bankruptcy court relied for this point involved severe obstacles to merits determinations caused by the plaintiff's noncompliant conduct over an extended period of time. Allen v. Bayer Corp. (In re Phenylpropanolamine (PPA) Prod. Liab. Litig.), 460 F.3d 1217, 1237 (9th Cir. 2006) ("failure to comply with [case management order] obligations brought these MDL actions to a standstill"); Alonzo v. City of L.A., No. CV 14-05636-RGK (Minute Order) (C.D. Cal. July 24, 2015) ("Plaintiff failed to produce documents which are necessary for Defendant to adequately litigate this case."). Here, in contrast, Olomi's one-time act of neglect in failing to file and serve a pretrial stipulation did not present anything close to the type of severe impediment to litigation on the merits that was at issue in Allen and Alonzo. Simply put, there was nothing in the record to differentiate the case at bar from the majority of cases in which this factor militates decidedly against dismissal. See, e.g. Yourish, 191 F.3d at 992; Hernandez v. City of El Monte, 138 F.3d 393, 399 (9th Cir. 1998); Malone, 833 F.2d at 133 n.2; see also Gonzalez v. Kitay (In re Kitay), 2015 WL 8550637 at *9 (Mem. Dec.) (9th Cir. BAP Dec. 10, 2015) ("The fourth factor, whether public policy favors disposition of the case on the merits, normally weighs strongly against dismissal.").

    Thus, the bankruptcy court's finding on the fourth Henderson factor was clearly erroneous. The policy in favor of litigation on the merits strongly militated against dismissal of Olomi's nondischargeability action, and the bankruptcy court's finding that this factor only weakly militated against dismissal was illogical and not supported by the record.

**5. Availability Of Less Drastic Sanctions**

In its memorandum decision denying Olomi's reconsideration motion, the bankruptcy court elaborated on its reasoning why alternative lesser sanctions were "unavailable." The court admitted that alternatives "are always available," but it considered such alternatives unwise, inappropriate and improper. The bankruptcy court engaged in a slippery-slope type of analysis in which it concluded that, if it imposed lesser, monetary sanctions against Olomi, pretty soon all litigants would be free to ignore the pretrial stipulation requirement, "knowing that the worst that would happen to them is that they would be required to pay a toll charge in the form of a monetary sanction for this privilege." Mem. Dec. (Nov. 10, 2016) at 8:13-15.

Aside from the logical fallacy evident in the court's reasoning, the court's analysis incorrectly emphasized the perceived systemic impact of a more lenient approach to sanctions, instead of focusing on the potential of alternative lesser sanctions to secure future compliance from Olomi. See In re Singh, 2016 WL 770195 at *9-10 (rejecting a similar alternative lesser sanctions analysis that emphasized systemic concerns over what was needed on a case-specific basis to secure litigant compliance).

Here, Olomi had no prior history of noncompliance. While his efforts to ascertain and follow the court's pretrial procedures were clearly inadequate, there is nothing in the record to indicate that a monetary/compensatory sanction would have been insufficient to obtain his future compliance. Consequently, the bankruptcy court's finding on the fifth

Henderson factor was clearly erroneous.[4]

Additionally, the bankruptcy court's emphasis on the perceived systemic effect of a more lenient approach to sanctions rendered its dismissal sanction wholly disproportionate to Olomi's one-time act of noncompliance. A dismissal sanction cannot ever really satisfy the fifth Henderson factor without some thought given to the proportionality of the sanction to the misconduct. See In re Roessler-Lobert, ___ B.R. ___, 2017 WL 2189520, *10 & n.13 (noting that concept of proportionality is largely subsumed within the fifth Henderson factor).

**6.  Results From Application Of The Henderson Factors**

Only the first two of the five Henderson factors militated in favor of dismissal. There was no demonstration of a genuine risk of prejudice to Tukhi, nor were effective alternative lesser sanctions shown to be unavailable. Furthermore, the policy favoring decisions on the merits strongly militated against dismissal.

At bottom, the bankruptcy court appears to have given inordinate weight to its concern over its overcrowded docket and the systemic effect a more lenient sanctions policy might have on

---

[4] Sometimes, a prior warning that noncompliance will result in dismissal can serve as a substitute to consideration of alternative lesser sanctions. Yourish, 191 F.3d at 992; see also Pagtalunan v. Galaza, 291 F.3d 639, 643 (9th Cir. 2002). This substitution theory apparently is based on the notion that the threat of dismissal is, itself, a form of alternative lesser sanction, and if that does not secure compliance, the trial court has discharged its duty to consider alternative lesser sanctions. Pagtalunan, 291 F.3d at 643. But this substitute to considering alternative lesser sanctions typically applies only when the dismissal warnings were made in response to prior noncompliance. Id.; Yourish, 191 F.3d at 992.

19

its ability quickly and efficiently to move cases on its docket towards resolution.  We sympathize with the bankruptcy court's palpable frustration with litigants who do not pay adequate attention to court procedures and the very real impact their inattention has on the court's ability expeditiously to administer justice.  Even so, that sympathy does not permit us to gloss over the established legal standards for imposing terminating sanctions on plaintiffs.

In sum, the bankruptcy court abused its discretion in dismissing Olomi's nondischargeability action based either on his violation of Local Rule 7016-1(b) and (c) or on his delay in prosecution of the adversary proceeding.

**CONCLUSION**

For the reasons set forth above, the bankruptcy court's judgment dismissing Olomi's adversary proceeding is VACATED, and this matter is REMANDED for completion of pretrial proceedings and the setting of a trial date.